

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**MARK XAVIER WALLACE,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**

**CRIMINAL ACTION NO. 4:17-cr-45(02)**
**CIVIL ACTION NO. 4:21-cv-125**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Mark Xavier Wallace's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Pet'r's Mot. Vacate, ECF No. 252 ("Pet'r's Mot."). The Government opposed the Motion and Petitioner replied. Resp't's Mem. Opp. Pet'r's Mot. Vacate, ECF No. 267 ("Resp't's Mem. Opp."); Pet'r's Reply to Resp't's Mem. Opp. Pet'r's Mot. Vacate, ECF No. 273 ("Pet'r's Reply"). The matter is now ripe for judicial determination. Having reviewed the Motion and relevant filings, the Court finds that a hearing is not necessary to address Petitioner's Motion. *See* 28 U.S.C. § 2255(b) (A court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). For the reasons set forth below, Petitioner's § 2255 Motion is **DENIED**.

### I.   FACTUAL AND PROCEDURAL HISTORY

On April 12, 2017, Petitioner and two co-defendants were named in a one-count Indictment. Indictment, ECF No. 7. On May 25, 2017, Attorney Bruce Sams was appointed as attorney for Petitioner pursuant to the Criminal Justice Act of 1964. On October 16, 2017, Petitioner and three co-defendants were named in a one-count Superseding Indictment. Supers.

1

Indictment, ECF No. 57. Count One charged Petitioner, and each of his co-defendants, with Use of a Firearm Resulting in Death, in violation of 18 U.S.C. §§ 924(c)(1) and (j), and 2. *Id.* On October 26, 2017, Petitioner, through counsel, filed a Motion to Withdraw and Substitute New Counsel, requesting the Court grant Attorney Sams leave to withdraw and substitute Attorney Andrew M. Sacks as counsel. Pet'r's Mot. Withdraw & Sub. Counsel, ECF No. 71. On November 8, 2017, the Court granted Petitioner's motion. Order Grant'g Pet'r's Mot. Withdraw & Sub. Counsel, ECF No. 73. Accordingly, Attorney Sacks filed his notice of appearance that same day. Notice Appear., ECF No. 74. On November 30, 2017, Petitioner pled not guilty to Count One. Arraign. Mins., ECF No. 82. On April 10, 2018, the Court commenced a six-day jury trial. Open Court Proceed'g Mins., ECF Nos. 109-15, 118. On April 17, 2017, the jury returned a guilty verdict on Count One of the Superseding Indictment with respect to Petitioner. Jury Verdict, ECF No. 121.

According to the Presentence Investigation Report ("PSR"), prior to March 13, 2009, co-defendant Bryan Brown ("Brown") and at least two others targeted and conducted surveillance on Louis Joseph ("Joseph") for the purposes of robbing him of drugs and/or money. Presentence Inv. Report ¶ 9, ECF No. 159 ("PSR"). Petitioner, who had a reputation for successful home invasions and robberies, learned of the target on Joseph and conspired with Brown to conduct a home invasion. *Id.* Petitioner recruited Joseph Benson ("Benson") and Rosuan Kindell ("Kindell"), both of whom resided in Boston, Massachusetts, to help commit the home invasion. *Id.* Benson and Kindell arrived in Williamsburg, Virginia, by Greyhound bus on March 12, 2009. *Id.* at ¶ 10. Petitioner was in telephone contact with Benson and Kindell on that day. *Id.* Petitioner was also in telephone contact with Brown on or about that day and March 13, 2009. *Id.* On March 13, 2009, Brown arrived at Joseph's home in the mid-to-late morning hours. *Id.* at ¶ 11. Benson and Kindell

entered the residence by kicking in the door. *Id.* Joseph and his girlfriend's five-year-old son, J.W., were present in the home. *Id.* at ¶ 12. In an interview with law enforcement, J.W. stated he was playing video games in his room when he heard people talking in the living room. *Id.* He observed Joseph and two unknown Black males standing in the living room. *Id.* Joseph told J.W. to go back into the bedroom. *Id.* J.W. heard the individuals tell Joseph to shut up. *Id.* During the home invasion, Louis Joseph was shot and killed. *Id.* at ¶ 11. An autopsy report revealed Joseph suffered five to six gunshot wounds to his torso and thighs. *Id.* at ¶ 16. Joseph also suffered several injuries all over his body. *Id.* That same day, Brown contacted an unindicted co-conspirator and indicated he had two firearms. *Id.* at ¶ 14. Greyhound bus records indicated Benson and Kindell returned to Boston on March 14, 2009. *Id.* at ¶ 17.

Petitioner was assessed a Criminal History Category of VI, Total Offense Level of 47, and had a recommended U.S. Sentencing Guidelines range of life in prison. *Id.* at ¶¶ 107-08. Under the Guidelines, Petitioner had a base offense level of 43 and received a four-level enhancement pursuant to §3B1.1(a) for Adjustment for Role in the Offense. *Id.* at ¶¶ 25, 32. Petitioner objected to this four-level role enhancement, arguing there was evidence that he intended a simple burglary, and did not organize a home invasion resulting in murder nor conspire or recruit anyone for that purpose. *Id.* at 32. At the sentencing hearing, however, the Court overruled Petitioner's objection, finding there was evidence that Petitioner was an organizer or leader from the record. Sentenc'g Proceed'g Tr. 8:19-9:01, ECF No. 201 ("Sentenc'g Tr."). The Court sentenced Petitioner to 540 months' incarceration, to be served consecutive to a sentence Petitioner was serving in another federal case, followed by five years of supervised release. J., ECF No. 175.

On August 13, 2018, Petitioner timely appealed to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). Notice Appeal, ECF No. 177; Transmiss. Notice Appeal,

ECF No. 178. On September 25, 2018, the Fourth Circuit appointed Dana R. Cormier as Petitioner's appellate counsel. Order Sept. 25, 2018, ECF No. 185. On March 11, 2019, the Fourth Circuit entered an order relieving Attorney Cormier from the obligation of further legal representation of Petitioner on appeal. Order March 11, 2019, ECF No. 208. Thereafter, Attorney Sacks re-appeared as retained appellant counsel at Petitioner's request. Resp't's Mem. Opp. Ex. 1, at ¶ 25. On April 24, 2020, the Fourth Circuit affirmed Petitioner's conviction and sentence. *See United States v. Benson*, 957 F.3d 218 (4th Cir. 2020). The Supreme Court denied his petition for certiorari on December 7, 2020. *See Wallace v. United States*, 141 S. Ct. 935 (2020).

On September 27, 2021, Petitioner timely filed the instant *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Pet'r's Mot. Petitioner makes three claims: (1) trial counsel provided ineffective assistance of counsel by failing to object to a jury instruction on stipulations; (2) appellate counsel provided ineffective assistance of counsel by failing to supplement the direct appeal with support under *United States v. Davis*, 139 S. Ct. 2319 (2019) for his insufficiency of evidence claim; and (3) appellate counsel provided ineffective assistance of counsel by not appealing the four-level role enhancement Petitioner received. *Id.* at 10. On December 8, 2021, the Government replied in opposition. Resp't's Mem. Opp. On February 4, 2022, Petitioner replied. Pet'r's Reply.

## II.    LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a

preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

## B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6

would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if petitioner makes an insufficient showing on one prong. *Id.* at 697.

## III.   DISCUSSION

Petitioner claims he is entitled to relief because his counsel provided ineffective assistance in three ways: (1) at trial, counsel failed to object to a jury instruction on stipulations; (2) on appeal, counsel failed to supplement the insufficiency of evidence claim with support under *United States v. Davis*, 139 S. Ct. 2319 (2019); and (3) on appeal, counsel failed to challenge the four-level role enhancement Petitioner received. Pet'r's Mot. at 10. These claims only pertain to Attorney Sacks.

### I.   Ineffective Assistance of Counsel: Jury Instruction

Petitioner first argues that his trial counsel provided ineffective assistance by failing to object to the Court's jury instruction on stipulations. Pet'r's Mot. at 10, 14-15. During the course of Petitioner's trial, the parties agreed to twenty-nine stipulations. *Id.* at 14. Accordingly, the Court instructed the jury on how to consider such stipulations. Jury Instruction No. 3, "Evidence in the Case," instructed the jury, in relevant part:

> "Statements and arguments of counsel are not evidence in the case, unless made as an admission or stipulation of fact. When the attorneys on both sides stipulate or agree as to the existence of a fact, however, you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proved."

Jury Instructs. 7, ECF No. 132. Petitioner argues his counsel was ineffective in not objecting to this instruction for two reasons: first, by accepting a stipulation as a proven fact, the instruction removed an element of the crime from the jury's consideration; and second, a jury is not necessarily bound by a stipulation in a criminal case. Pet'r's Mot. at 14.

First, the essential elements of Count One, Use of a Firearm Causing the Death of Another, as charged in the Superseding Indictment, were:

> "One: The Defendants, aided and abetted by each other, committed a crime of violence, namely, the crime of interference with commerce by robbery . . .";

> "Two: During and in relation to the commission of that crime, the Defendants aided and abetted each other, knowingly used or carried a firearm, and";

> "Three: The Defendants, aided and abetted by each other, with malice aforethought, used or carried a firearm to cause the death of Louis Joseph."

Jury Instructs. at 29. The twenty-nine stipulations introduced into evidence and provided to the jury during deliberations do not stipulate to any of the aforementioned essential elements. *See* Stipulations, ECF No. 130. Indeed, the stipulations primarily identify different types of evidence the Government introduced as exhibits and facts related to obtaining and maintaining such evidence: physical evidence (#1-2, 4-6, 8) and how it was maintained (#3, 7, 26); wire and electronic communications intercept authorization (#9); documents, including business records (#10, 12, 29); audio recording and transcript of jail calls (#11); call detail records, telephone bill records, and subscriber records (#13-15, 17-22); listings of cell-sites and repoll numbers (#23-25). *See id.* Stipulation #16 pertains to a fact related to co-defendant Kindell's use of a particular cell-phone number. *Id.* at 5. Stipulation #27 relates to a shoe impression at the crime scene. *Id.* at 6. Stipulation #28 relates to fingerprint evidence. *Id.*

Moreover, Stipulation #8, which identifies two exhibits as firearms, is the only stipulation that relates directly to the essential elements of the charge and does not mention Petitioner nor his co-defendants, let alone state that any of them carried or used those firearms. *Id.* at 3. While Petitioner is correct that "all of the stipulations can be identified as facts about the offense" and may have been "needed to prove the elements of the offense," the stipulations themselves do not stipulate to any of the essential elements. Pet'r's Reply at 6. Therefore, the Court finds Petitioner's first reason to be inapplicable.[1]

Second, Petitioner argues counsel should have objected because the instruction is incorrect as a matter of law. By agreeing to a factual stipulation, which must be "signed by a defendant, his attorney, and the prosecutor," "a defendant waives the requirement that the government produce evidence (other than the stipulation itself) to establish the facts stipulated to beyond a reasonable doubt." *United States v. Muse*, 83 F.3d 672, 678 (4th Cir. 1996). In waiving that requirement, "a defendant may not argue at trial or on appeal that the stipulation is insufficient to prove beyond a reasonable doubt the facts or elements to which he has stipulated." *Id.* at 679. The general rule is that "'stipulations of attorneys made during a trial may not be disregarded or set aside at will.'" *Marshall v. Emersons Ltd.*, 593 F.2d 565, 569 (4th Cir. 1979) (quoting *Maryland Cas. Co. v. Rickenbaker*, 146 F.2d 751, 753 (4th Cir. 1944)). Yet, "a stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties." *Maryland Cas.*, 146 F.2d at 753.

The Court recognizes that most circuits have their own, often differing, versions of model jury instructions for lower courts to follow. The Fourth Circuit, however, does not publish model

---

[1] Petitioner also cites to case law regarding the propriety of stipulations to witness testimony for uncalled witnesses. *See* Pet'r's Mot. at 15 (citing *United States v. Bennally*, 756 F.2d 773 (10th Cir. 1985)); *see also* Pet'r's Reply at 6. Yet, the stipulations do not pertain to any uncalled witnesses and the parties have not identified any. *See* Stipulations. Accordingly, the Court also finds this authority to be inapplicable.

jury instructions to guide the Court. Even if it did, however, the Court has discretion in deciding which instructions it provides to the jury. *See Muse*, 83 F.3d at 677. The specific jury instruction that Petitioner challenges is consistent with general federal practice and similar instructions used by sister circuits. *See, e.g.*, Federal Judicial Center, Pattern Crim. Jury Instr. 12 (1988) ("While we were hearing evidence you were told that the government and the defendant agreed, or stipulated, that [stipulation] . . . You must accept that as fact, even though nothing more was said about it one way or the other."); *see also* Model Crim. Jury Instr. 8th Cir. 2.03 (2020) ("The [government][prosecution] and the defendant[s] have stipulated—that is, they have agreed—that certain facts are as counsel have just stated. You must therefore treat those facts as having been proved."); *cf.* 1A Fed. Jury Prac. & Instr. § 12:03 (6th ed.) ("When the attorneys on both sides stipulate or agree as to the existence of a fact, you may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts."). Petitioner's trial counsel also contends that he did not challenge this instruction "because defense counsel believes that the instruction was a correct statement of law and, therefore, an objection thereto was neither well-founded nor appropriate." Resp't's Mem. Opp. at Ex. 1, at ¶ 17. In fact, counsel had "seen this same (or a very similar) instruction routinely given" by district courts. *Id.* at ¶ 19. Since this instruction is consistent with federal practice and the practice of Petitioner's counsel, the Court finds it was reasonable for him not to object.

Moreover, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973). While an instruction by itself might rise to the level of constitutional error, "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Id.* at 147.

10

"Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Id.* Even assuming, *arguendo*, that the failure to object to this instruction fell below an objective standard of reasonableness, the Court nonetheless finds that it was not prejudicial such that Petitioner was deprived of a fair trial or that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. Accordingly, the Court finds Petitioner's first claim for ineffective assistance of counsel to be without merit.

## II.   Ineffective Assistance of Counsel: Insufficiency of Evidence Under *Davis*

Petitioner next claims his appellate counsel provided ineffective assistance by failing to supplement the insufficiency of evidence claim with support under *United States v. Davis*, 139 S. Ct. 2319 (2019).[2] Pet'r's Mot. at 15-19. As previously mentioned, Petitioner was originally represented on appeal by Attorney Cormier, who filed Petitioner's initial brief on February 20, 2019.[3] *Id.* at 16. On March 11, 2019, the Fourth Circuit entered an order relieving Attorney Cormier from the obligation of further legal representation of Petitioner on appeal. Order March 11, 2019. Thereafter, Attorney Sacks re-appeared as retained appellant counsel at Petitioner's request. Resp't's Mem. Opp. at Ex. 1, at ¶ 25. On June 24, 2019, the Supreme Court decided *United States v. Davis*. *See* 139 S. Ct. at 2319. On September 13, 2019, Sacks filed a motion for leave to file a supplemental brief appending two additional issues, including the impact of *Davis* on Petitioner's case. Resp't's Mem. Opp. at Ex. 1, at ¶ 26. On October 21, 2019, the Fourth Circuit

---

[2] Petitioner also argues that Sacks did not address the insufficiency of the evidence claim in his supplemental reply brief. Pet'r's Mot. at 16-17; Pet'r's Reply at 11. Because the nature of a reply is to elaborate on certain arguments and Sacks filed supplemental briefing addressing additional issues, the Court does not find Sacks' decision not to address this claim in his reply to be unreasonable or deficient. *Strickland*, 466 U.S. at 687. Even if it were, however, the Fourth Circuit addressed the merits of that issue in its opinion. *See Benson*, 957 F.3d at 237-39. The Court therefore finds that any deficiency was not prejudicial. *Strickland*, 466 U.S. at 687.

[3] The Court notes that Petitioner states Attorney Cormier filed the initial brief on February 20, 2020. Pet'r's Mot. at 16. The record reflects the initial brief was filed on February 20, 2019. The Court therefore assumes Petitioner's noted date to be a typographical error and the correct date of initial filing to be February 20, 2019.

granted Sacks' motion, and, on November 12, 2019, Sacks filed a supplemental brief. *Id.* at ¶¶ 27-28; *see also* UNITED STATES OF AMERICA, Plaintiff -- Appellee, v. Joseph James Cain BENSON, Bryan Lamar Brown, Mark Xavier Wallace, Defendants -- Appellants., 2019 WL 6271170 (C.A.4) ("Suppl. Brief").

In the supplemental brief, Sacks argued that Petitioner was entitled to a reversal of his conviction and sentence because he was convicted under 18 U.S.C. § 924(c)(1) and (j), and, post-sentencing, the Supreme Court in *Davis* held § 924(c)(3)(B) to be unconstitutionally vague. Suppl. Brief at 10-11. Sacks reiterated this argument in his supplemental reply brief. *See* UNITED STATES OF AMERICA, Plaintiff -- Appellee, v. Joseph James Cain BENSON, Bryan Lamar Brown, Mark Xavier Wallace, Defendants -- Appellants., 2019 WL 6839291 (C.A.4), 2-3. On April 24, 2020, the Fourth Circuit affirmed Petitioner's conviction and sentence. *See Benson*, 957 F.3d at 218. In its decision, the Fourth Circuit explicitly addressed Sacks' argument on *Davis* and found it to be without merit. *Id.* at 239-40. Specifically, the court reasoned that the predicate offense was a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). *Id.* at 240. In *United States v. Mathis*, the Fourth Circuit concluded that "a Hobbs Act robbery constitutes a crime of violence under the force clause at § 924(c)(3)(A), *not* the residual clause at § 924(c)(3)(B)." *Id.* (citing 932 F.3d 242, 266 (4th Cir. 2019)) (emphasis in original). Accordingly, the Fourth Circuit found that *Davis* had no bearing on whether a Hobbs Act robbery constitutes a valid crime of violence for the purposes of a § 924(c)(1) conviction. *Id.*

In his Motion, Petitioner initially argued that "Sacks had at least two opportunities to supplement the initial argument with *Davis*, or he could have added another insufficiency of the evidence claim altogether." Pet'r's Mot. at 19. In his Reply, however, Petitioner acknowledges that Sacks raised a *Davis* issue, yet argues that "he could have also argued the insufficiency of the

evidence in light of *Davis*." Pet'r's Reply at 12. In other words, Petitioner argues that Sacks should have also raised or addressed how *Davis* affected the merits of the insufficiency of the evidence claim. *See id.* at Ex. 1, at ¶ 4 ("Even though, both issues cite to Davis [sic], the two issues are not the same.").[4] The Supreme Court in *Davis*, however, did not address any evidentiary sufficiency issue. *See* 139 S. Ct. at 2319. The Court evaluated evidence regarding the statutory history of § 924(c)(3)(B), but not the sufficiency of the evidence to support the charge in that particular case. *Id.* at 2328-33. It was not appropriate, therefore, for Sacks to combine the sufficiency of evidence and *Davis* issues into a new, mended issue, as Petitioner suggests. Accordingly, the Court finds that Sacks was not deficient in failing to raise this issue. *Strickland*, 466 U.S. at 687.

### III.   Ineffective Assistance of Counsel: Four-Level Enhancement

Finally, Petitioner claims Sacks was ineffective in not challenging the four-level enhancement Petitioner received at sentencing for his role in the offense. Pet'r's Mot. at 19-21. As part of the Guidelines calculation in his PSR, Petitioner received a four-level enhancement in his offense level for his role in the offense, pursuant to Sentencing Guideline §3B1.1(a). PSR at ¶¶ 25, 32. In the PSR, Petitioner's role in the offense is described as follows:

> "[Petitioner] organized the home invasion of Louis Joseph. He conspired with Bryan Brown and at least two others who were already conducting surveillance on Louis Joseph for the purposes of a home invasion and/or robbery. [Petitioner] recruited Joseph Benson and Rosuan Kindell to commit the home invasion that resulted in the death of Louis Joseph. Therefore, his offense level has been increased by four levels pursuant to 3B1.1(a)."

*Id.* at ¶ 25. U.S.S.G. §3B1.1(a), "Aggravating Role," provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive,

---

[4] *Pro se* filers are entitled to a more liberal construction of their pleadings. *Erickson*, 551 U.S. at 94. Because Petitioner alleges that this issue is distinct from the *Davis* issue raised on appeal, the Court does not find he is foreclosed from raising it here, as the Government argues. *See* Resp't's Mem. Opp. at 6-7 (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)).

increase by 4 levels." U.S. SENT'G GUIDELINES MANUAL §3B1.1(A) (U.S. SENT'G COMM'N 2016)

("U.S.S.G. Manual"). Accordingly, Petitioner's offense level was increased by four levels pursuant

to U.S.S.G. §3B1.1(a). PSR at ¶ 32.

In his sentencing position paper, counsel objected to the four-level enhancement, arguing

that the Superseding Indictment only charged a total of four individuals and that Petitioner was not

actually "an organizer or leader" of the charged criminal activity. Def.'s Position on Sentencing 1-

2, ECF No. 166. At the sentencing hearing, counsel argued against this enhancement, relying on

the position adopted at trial and adding his objection to Petitioner's "characterization as an

organizer or leader." Sentenc'g Tr. at 5:03-08. Counsel argued that Petitioner was present in a car

with three co-defendants at the scene of the victim's house but clarified that Petitioner did not

drive that car. *Id.* at 5:08-17. There was no evidence, counsel argued, that Petitioner organized or

led the ultimate plan implemented by the co-defendants who went inside the victim's home to

shoot and rob him. *Id.* at 5:18-22. Ultimately, counsel concluded that "the evidence in the case did

not indicate that [Petitioner] did anything other than go to the scene, expect the burglary, two

people went in, broke bad, fired weapons, killed a man . . . And that doesn't make [Petitioner] . . .

an organizer or leader of the offense for which we are here today." *Id.* at 8:11-17. The Court

overruled counsel's objection, finding the evidence presented at trial supported that Petitioner was

an organizer or leader of the relevant criminal activity. *Id.* at 8:23-9:01.

Petitioner argues Sacks provided ineffective assistance of counsel by deciding not to appeal

the Court's decision to overrule his objection and apply the four-level enhancement. Pet'r's Mot.

at 20. Specifically, Petitioner contends that even though he was "instrumental in bringing Kindell

and Benson from out-of-state to commit the robbery, he did not intend for them to commit murder,

and once they arrived, they were their own boss." Pet'r's Reply at 17. Therefore, Petitioner claims

that "this issue was just as strong as any of the issues raised in the supplemental brief." *Id.* at 16. He also claims that, because counsel objected to the enhancement at sentencing, the Fourth Circuit would have reviewed it under harmless error rather than plain error. *Id.* Even under a preponderance of the evidence standard, however, Petitioner claims the evidence of his role was still insufficient. *Id.* at 16-17. Finally, Petitioner argues "there is no limit to the number of issues that can be raised in a brief on direct appeal." *Id.* at 17.

"Th[e] right to effective assistance of counsel extends to require such assistance on direct appeal of a criminal conviction." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (applying *Strickland* to claims of ineffective assistance of counsel during appellate proceedings). "In deciding which issues to raise on appeal, [counsel] is entitled to the presumption that he decided which issues were most likely to afford relief." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotations and citations omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval* in *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal . . . with the strength of arguments that were raised." *United States v. Allmendinger*, 894 F.3d 121, 126 (4th Cir. 2018). In conducting that comparison, the court "focus[es] on the

reasonableness of appellate counsel's conduct viewed as of the time of the conduct." *Id.* (citing *Strickland*, 466 U.S. at 690).

Appellate counsel contends he "did not believe that challenging the four-level leadership enhancement on appeal was either well-founded legally or factually, nor was it tactically sound to do so." Resp't's Mem. Opp. at Ex. 1, at ¶ 35. Moreover, he notes that appealing the enhancement "would have highlighted the Government's arguments that Petitioner was the most culpable of the four co-defendants in terms of organizing the underlying armed robbery which spawned the killing." *Id.* at ¶ 36. Indeed, counsel believed doing so "would have likely put the Petitioner in a very negative light in the appeal" for the sake of "a very weak issue." *Id.* Upon review of the memoranda and the record, the Court finds counsel's decision to focus on stronger appellate issues and forego raising an issue that would have emphasized Petitioner's culpability is an example of "effective appellate advocacy." *Murray*, 477 U.S. at 536.

The Court also finds the "ignored issue" to be significantly weaker, if not altogether meritless, than the issues raised on appeal. *Gray*, 800 F.2d at 646. The U.S.S.G. §3B1.1 Application Notes define a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. Manual at §3B1.1 cmt. n.1. To qualify for an enhancement under §3B1.1, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *Id.* at cmt. n.2. Even if a defendant did not serve in that role over other individuals, an upward departure may nonetheless be warranted if the defendant "exercised management responsibility over the property, assets, or activities of a criminal organization." *Id.* Moreover, the number of participants is not necessarily controlling: "otherwise extensive" criminal activity may occur, for instance, during "a fraud that involved only three participants but used the unknowing services of many outsiders." *Id.* at cmt.

16

n.3. Indeed, during the sentencing hearing, the Court found that there were six participants involved in this criminal activity. *See* Sentenc'g Tr. at 4:18-22 ("We count the two shooters that were in the house, Mr. Brown who drove to the scene, [Petitioner], who was instrumental in organizing this criminal activity, and two people who conducted some surveillance of the victim's house before the shooting. That makes six people.").

Petitioner's claim that only §3B1.1(c) – a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)" – applies to him is both unavailing and supportive of the issue's weakness. Pet'r's Reply at 16. In so claiming, Petitioner acknowledges he was subject to at least a two-level enhancement. Regardless, the record justifies a four-level enhancement because Petitioner recruited the accomplices who ultimately carried out the crime at issue. *See* U.S.S.G. Manual at §3B1.1 cmt. n.4. The "nature of [Petitioner's] participation in the commission of the offense," furthermore, was that he voluntarily joined already-ongoing criminal activity and recruited the necessary accomplices to carry it out. *Id.* Finally, even without counsel appealing the issue, the Fourth Circuit independently concluded Petitioner was the most culpable defendant and the primary organizer of the offense. *See Benson*, 957 F.3d at 239 ("From this evidence of Wallace's relationships and extensive communications with the other codefendants—especially directly before and after the murder—the jury could have reasonably inferred that Wallace was the chief organizer of an armed robbery."). Accordingly, the Court finds counsel's decision not to appeal the four-level enhancement was both reasonable and not prejudicial. *Strickland*, 466 U.S. at 687.

## IV.    CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a

substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Newport News, Virginia
March /6 , 2022

Raymond A. Jackson
United States District Judge
UNITED STATES DISTRICT JUDGE